**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ADAM WILLIS, | |
| Plaintiff, | |
| v. | Civil Action No. 25-1294-RGA |
| GARRET STROUD, SARKIS MIKHAIL a/k/a SAM MIKHAIL, and LAZARUS CAPITAL, LLC, | |
| Defendants. | |

<u>MEMORANDUM ORDER</u>

Before me is Defendants Sarkis Mikhail and Lazarus Capital, LLC's motion to vacate default judgment. (D.I. 20). I have considered the parties' briefing and other papers submitted before oral argument. (D.I. 20, 21, 27, 31, 33, 34). I heard oral argument on May 21, 2026. After oral argument, I requested the parties submit letters detailing the availability of alternative sanctions (D.I. 36) and I have read the parties' additional letters (D.I. 37, 42, 47). For the reasons set forth below, the motion to vacate will be GRANTED for Mikhail (when Mikhail has paid the alternative sanction) and DENIED for Lazarus.

## I.    BACKGROUND

Plaintiff Adam Willis brought this action for violations of federal securities laws, breaches of fiduciary duty, fraud, and other misconduct in connection with Plaintiff's investments in Defendant Lazarus. (D.I. 1).

Plaintiff's Complaint against Mikhail, Lazarus, and a third Defendant, Garrett Stroud, was filed in this Court on October 22, 2025. (*Id.*). The Clerk of the Court issued summonses on October 23, 2025. Lazarus was properly served on October 23, 2025. (D.I. 6).

1

Service on Mikhail took longer to complete.  Under Delaware law, service upon a manager of an LLC may be accomplished by service upon the registered agent of the LLC and by registered mail to the manager's last known address.  6 Del. C. § 18-109.  Plaintiff followed that procedure. On October 23, 2025, Plaintiff individually served Mikhail by service on Lazarus's registered agent. (D.I. 8).  On October 27, 2025, the Clerk of Court sent, by registered mail, a certified copy of the Complaint, Summons, and other papers to Mikhail at 300 Harbour Drive, #36, Humacao, Puerto Rico 00791.  (D.I. 11).  The Clerk cited Fed. R. Civ. Pro. 4(f)(2)(C)(ii).  (*Id.*).  On November 4, 2025, the Clerk sent the relevant papers a second time to Mikhail at the same address, this time citing Fed. R. Civ. Pro. 4(e)(1) and 6 Del. C. § 18-109.  (D.I. 12).

On November 7, 2025, Plaintiff's counsel emailed the Complaint to attorney Christopher Rogers (D.I. 16-2 at 1), who had previously advised that he represented both individual Defendants. (D.I. 31-2 at 2).

No Defendant responded.

Plaintiff requested default.  (D.I. 14).  The Clerk entered default as to all Defendants on December 15, 2025. (D.I. 15).  Two days later, Plaintiff moved for a default judgment (D.I. 16), which the Clerk entered on January 15, 2026 (D.I. 17).  By January 22, 2026, Mikhail had retained a California lawyer, Garo Khajadourian, in connection with the entry of the default judgment. (D.I. 21-2 at 2).  On that date, Khajadourian contacted Plaintiff's counsel inquiring about a stipulation to vacate the default in lieu of motion practice. (*Id.*). The Clerk certified the judgment for registration in another District on February 18, 2026. (D.I. 18).  By February 24, 2026, Plaintiff had begun attempts to serve Mikhail with a Tennessee lawsuit for fraudulent conveyance.  (D.I. 24).

On March 25, 2026, Mikhail and Lazarus filed the pending motion to vacate default judgment. (D.I. 20).

## II.    LEGAL STANDARD

An entry of default may be vacated upon a showing of "good cause." FED. R. CIV. P. 55(c). An entry of a default judgment may be vacated under Rule 60(b). *Id.* Default judgments are disfavored as they prevent claims from being decided on the merits. *See United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). In close cases, "doubts should be resolved in favor of setting aside the default and reaching the merits." *Zawadski de Bueno v. Bueno Castro*, 822 F.2d 416, 420 (3d Cir. 1987). When considering a decision to set aside the entry of default or a default judgment,[1] the Court should exercise its discretion while considering the following factors: "(1) whether lifting the default would prejudice the plaintiff; (2) whether the defendant has a *prima facie* meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions." *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987).

## III.    DISCUSSION

### A. Prejudice to Plaintiff

Plaintiff presents two arguments for how he would be prejudiced if the default is vacated. (D.I. 21 at 15–16). First, Plaintiff argues that he has spent a substantial amount of time and resources enforcing the judgment. (*Id.* at 15). These efforts included locating assets in California and Tennessee and filing a separate action in Tennessee. (*Id.*). Second, Plaintiff argues that vacating the judgment would provide Defendants additional time to conceal or transfer assets to

---

[1] In the interest of brevity, I will generally refer to "default and default judgment" simply as "default."

3

avoid collection efforts. (*Id.* at 15–16). Plaintiff argues that this concern is not merely speculative because Mikhail has already attempted to avoid collection efforts by falsely asserting that he has limited financial assets and by conveying real property to his wife. (*Id.* at 15). Defendants respond by arguing that none of Plaintiff's collection efforts will be wasted if he is successful after the case is determined on the merits. (D.I. 27 at 8). In a footnote, Defendants argue that the Court should ignore Plaintiff's argument regarding fraudulent transfer or concealment of assets because the allegations have not been proven. (*Id.* at 8 n.8).

Like nearly all similarly-situated plaintiffs, if the default judgment is vacated, Willis will suffer delay in reaching a judgment on the underlying claim and will lose the money spent on attorney's fees and other expenses in obtaining the default judgment and defending against the instant motion. However, this form of loss and delay is rarely enough on its own to prevent the vacatur of a default judgment. *See Feliciano v. Reliant Tooling Co.,* 691 F.2d 653, 656–57 (3d Cir. 1982); *Tozer v. Charles A. Krause Mill Co.,* 189 F.2d 242, 246 (3d Cir. 1951).

I am not convinced that Plaintiff would face significant prejudice if the default were vacated. For the most part, the time and effort spent identifying various assets and beginning collection efforts could be paused and picked up again upon a later judgment entered in Plaintiff's favor. Mikhail may or may not be improperly transferring his property or misrepresenting his financial assets, but I think the present factual record is insufficient to draw meaningful conclusions about any of these acts. *See Farnese v. Bagnasco,* 687 F.2d 761, 765 (3d Cir. 1982). Thus, there is little risk of prejudice to Plaintiff if the default is vacated. I think this factor favors granting Defendants' motion.

4

## B. Meritorious Defenses

In ten bullet points, Defendants present a list of possible defenses. (D.I. 20 at 4–5). This list includes a set of four broad defenses and a list of general arguments against each count. (*Id.*). Defendants have not filed a proposed answer, a proposed motion to dismiss, or any other document putting any meat on the skeletal list of possible defenses.

The Third Circuit "impose[s] a more stringent standard [than merely alleging a defense], which requires that a defendant seeking to set aside a default judgment set forth with some specificity the grounds for his defense." *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988). When a defendant meets this standard, I must determine whether the defenses, "if established [at] trial, would constitute a complete defense to the action." *Tozer*, 189 F.2d at 244.

Defendants fail to allege most of their defenses with enough specificity to come close to moving them past a generic allegation or a "mere recitation of the relevant statutory language or a phrase in the Federal Rules of Civil Procedure." *$55,518.05*, 728 F.2d at 196. For example, Defendants' third bullet point states, "Plaintiff likely waived some of his claims by continuing to invest in Lazarus." (D.I. 20 at 5). However, Defendants never identify the legal grounds for this defense, or to which claims the defense might apply. (*See id.*). Defendants' next bullet point states that "at least the following claims may be barred in whole or part by the applicable 3-year statutes of limitations." (*Id.*). Yet, Defendants do not attempt to support this argument with any facts detailing when the underlying events occurred, citations to the applicable statutes, any analysis of why the statutes apply, or if the defense would apply to each claim in its entirety. (*See id.*).

The same lack of specificity is present throughout most of the list. For example, the defense to Counts I and II is simply listed as a "lack of scienter and failure to satisfy Rule 9(b)." (*Id.*). A similar defense is given for Counts IV and V, stating that the Rule 9(b) specificity requirements

5

are likely not met because Mikhail's name is only mentioned six times in the complaint.[2] (*Id.*). The defenses provided for Counts III, VI, and VII state general legal principles; the defenses to these counts are, respectively, that a minority member does not owe a fiduciary duty, that no valid contract exists, and that rescission is not a cause of action. (*Id.*). Defendants' defense to the last Count is stated simply as "potential failure to bring suit within the applicable statute of limitations." (*Id.*). None of these defenses go beyond stating basic legal principles; there is no attempt to apply the facts of the case to these defenses.

The remaining two defenses, estoppel and/or unclean hands and the binding arbitration agreement, contain some factual support. (*Id.* at 4–5). Defendants explain their estoppel and/or unclean hands defense. (*Id.* at 4). Defendants argue that evidence will show that Plaintiff is a manager of Lazarus, had inside information, and participated significantly in trading cryptocurrency. (*Id.*). On the other hand, Defendants argue, the evidence will show that Mikhail played a minor role in the company and did not participate in trading decisions. (*Id.*). Beyond arguing that Defendants have only offered conclusory statements to support their defenses, Plaintiff has not disputed the facts Defendants offer in support of their estoppel and/or unclean hands defense. (*See* D.I. 21 at 12–13). Assuming that Defendants could prove these facts at trial, I believe Mikhail may have a meritorious estoppel and/or unclean hands defense. While Defendants have not explained how this defense constitutes a complete defense, Plaintiff has not argued otherwise. I do not believe Defendants have explained how this defense would apply to Lazarus.

Defendants make their binding arbitration agreement defense by quoting a portion of Lazarus's Operating Agreement containing an arbitration provision. (D.I. 20 at 5). However, it

---

[2] This defense is only applicable to Mikhail, not Lazarus.

was not until their reply that Defendants asserted that Plaintiff is bound by the agreement. (*See* D.I. 27 at 6). Perhaps Defendants did not make this assertion earlier as there would have been a notable contradiction between Defendants' positions that Plaintiff was bound by an arbitration agreement defense when one of Defendants' other defenses was that "no valid contract exists" between the parties. (D.I. 20 at 5). Defendants have not provided any documentation for the Court to draw the conclusions necessary for this defense; Defendants have not included a signed copy of the Operating Agreement and have "failed to attach a proposed answer to their motion to vacate." *Marks Law Offices, LLC v. Mireskandari*, 704 F. App'x 171, 177 (3d Cir. 2017). Thus, the Arbitration Agreement is not a meritorious defense for purposes of Defendants' motion to vacate.

As such, Defendants have only indicated a meritorious defense as to Mikhail; the one meritorious defense pushes the bounds of the Third Circuit's standard requiring specific facts that constitute a complete defense. As such, this factor slightly favors granting Defendants' motion as to Mikhail, but strongly favors denial of Defendants' motion as to Lazarus.

### C. Culpability of Defendants

Defendants argue that they are not culpable for the default. (D.I. 20 at 6). Defendants argue that the default resulted from Plaintiff's decision to serve Mikhail at his former address and from Mikhail's reliance on erroneous legal advice regarding service. (*Id.*). In contrast, Plaintiff argues that Defendants' choice not to respond to the Complaint, despite having notice of it, indicates direct culpability. (D.I. 21 at 6–10). Plaintiff points out that Defendants' arguments only attempt to explain why Mikhail did not respond; Defendants have not provided any argument as to why Lazarus did not respond. (*Id.* at 10–11).

"[T]he standard for 'culpable conduct' in this Circuit is the 'willfulness' or 'bad faith' of a non-responding defendant." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1182 (3d Cir. 1984).

7

"Appropriate application of the culpable conduct standard requires that as a threshold matter more than mere negligence be demonstrated." *Id.* at 1183. In addition to "acts intentionally designed to avoid compliance with court notices," "[r]eckless disregard for repeated communications from plaintiffs and the court, combined with the failure to investigate the source of a serious injury, can satisfy the culpable conduct standard." *Id.*; *see Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 523 (3d Cir. 2006).

### 1. Defendant Lazarus

There is no question that Lazarus was properly served; Defendants have not asserted otherwise. Defendants simply have not offered any reason why Lazarus chose not to respond to this lawsuit. Nothing indicates that Lazarus's "decision to allow the entry of the default judgment" was anything more than a "tactic as a matter of strategy." *Wells v. Rockefeller*, 728 F.2d 209, 214 (3d Cir. 1984). As such, Lazarus "must now live with its consequences." *Id.* Lazarus is culpable for the entry of default against it.

### 2. Defendant Mikhail

Mikhail now concedes that he was properly served; however, he argues that his failure to respond was excusable neglect because he relied on incorrect legal advice that service was not proper. (D.I. 20 at 6; D.I. 27 at 4–5). There are times when a lawyer's negligence may prevent a finding of culpability. *See Bueno*, 822 F.2d at 420–21; *Gross*, 700 F.2d at 124; *Feliciano*, 691 F.2d at 658. This is not one of those times.

Plaintiff had been in communication with Defendants' counsel prior to filing this lawsuit. (*See* D.I. 31-1 (Defendants' counsel's letter of August 1, 2025); D.I. 31-2 (emails dated July 22, 2025); D.I. 31-3 (emails on August 20 & 22, 2025)). These communications show that Defendants, including Mikhail, were on notice that the lawsuit was coming. *See Braverman Kaskey, P.C. v.*

8

*Toidze*, 599 F. App'x 448, 453 (3d Cir. 2015); *Nationwide Mut. Ins.*, 175 F. App'x at 523.  During these pre-lawsuit communications, Mikhail's attorney, Christopher Rogers,[3] sent an email to Plaintiff's counsel including a five-paragraph statement written by his clients, which included the following as its third paragraph:

> Similarly, Mr. Mikhail has endured life-threatening medical conditions, including multiple strokes, requiring extended hospitalization and leaving him with permanent health challenges. He continues to face significant and ongoing medical expenses. His income and assets are extremely limited, and he remains burdened with substantial obligations.

(D.I. 31-3 at 1).  The email not only indicates that Mikhail had knowledge of the threatened lawsuit, but it also indicates that he understood the lawsuit would be brought against him in an individual capacity.  Regardless of whether Mikhail knew he received service of the suit in a personal capacity (*see* D.I. 27-1 at ¶¶ 4–6 (denying such knowledge)), as one of two members of Lazarus, and as a manager who had authority to authorize legal representation on behalf of Lazarus, Mikhail had to have been aware that the lawsuit was forthcoming, that it would be filed in Delaware,[4] and that he would be named individually as a defendant.  The record does not show any communication, with one exception,[5] between Mikhail and any lawyer between August 22, 2025 (last Rogers email) and mid-January 2026 (hiring of Khadajourian).  Mikhail's apparent failure to take any action during this period was, at a minimum, reckless.  This is the type of reckless disregard of repeated notice of the lawsuit that establishes a defendant's culpability. *See Nationwide Mut. Ins.*, 175 F. App'x at 523.

---

[3] Mikhail argues that Rogers was not his personal attorney.  (D.I. 27-1 at ¶ 4).  However, the communications between the parties indicates that Rogers held himself out as representing Mikhail, and that Mikhail instructed Rogers to communicate with opposing counsel in a way that a client would. (*See* D.I. 31-1; D.I. 31-2; D.I. 31-3).

[4] Lazarus was a Delaware LLC, Plaintiff's lawyer was a Delaware lawyer, and the proposed complaint showed that it was going to be filed in a Delaware court.

[5] *See* D.I. 42-1, Ex. A (discussed in the next footnote).

9

Mikhail has not presented any evidence (other than his own vague say-so[6]) to support his argument that his failure to respond to the lawsuit was due to reliance on improper legal advice.[7] Unlike other cases where defendants provided affidavits or briefs authored by the attorneys whose negligence resulted in the default, Mikhail has not. *See Bueno*, 822 F.2d at 420; *Gross*, 700 F.2d at 122; *Feliciano*, 691 F.2d at 657. Mikhail's argument creates nearly the same situation that the Third Circuit intended to avoid by holding there was a more stringent standard for alleging facts to support a meritorious defense. "If we allow the setting aside of a default judgment on the mere recitation of the" claim of reliance on improper legal advice, "then we will be establishing a new

---

[6] In his declaration, Mikhail states, "Prior to engaging Delaware counsel, I was erroneously advised by Christopher Rogers, and then again later by Garo Khajadourian, that I had to be served in-person in this case." (D.I. 27-1, Ex. A at ¶ 5). As his only proof that he received improper legal advice, provided to the Court for the first time with his letter discussing alternative damages, Mikhail submitted a copy of an email Rogers sent on November 7, 2025. (D.I. 42-1, Ex. A). The email states:

> I received a courtesy copy of the actual filed complaint. This being provided to me does not constitute service of the complaint against Lazarus Capital or either of you [Mikhail or Stroud]. Your Delaware agent should notify you of any service related to Lazarus and you each have to be served individually. I was just making you both aware that it has been filed. Hopefully, this will give you a head start on anything you need to do to prepare before the clock starts ticking on making your responses. Be on the lookout for potential service processors.

(*Id.* at 1). While Rogers notes that the emailed courtesy copy of the Complaint sent to Rogers does not constitute service, nothing about this email indicates that Mikhail received improper legal advice regarding service. To the contrary, Rogers informed Mikhail that he should prepare for service and instructed him to be on the lookout for process servers. There is nothing that indicates that Rogers knew of any attempts to serve Mikhail or that his advice in the email related to any service attempt. If Mikhail misinterpreted this email, his improper belief was not a result of improper legal advice. This is particularly true given that, in his second declaration, Mikhail acknowledged that he "learn[ed] of Mr. Willis's intention to assert legal claims against me [in] July of 2025." (D.I. 44 at ¶ 4; *see also* D.I. 31-2, Ex. 2 at 1).

[7] It seems likely that Khajadourian was only retained after the default judgment was entered. As for Rogers, there is no evidence that he continued to represent Mikhail after August 2025 (and, ironically, Mikhail says Rogers never represented him), so it seems unlikely that either Khajadourian or Rogers was giving Mikhail advice about the effectiveness of service during the relevant time period.

10

right to automatically set aside any default judgment" if the defendant asserts a negligent attorney. *See $55,518.05*, 728 F.2d at 196.

This case is unlike others where negligent acts of an attorney protected the defendant from culpability. This is no allegation that either Rogers or Khajadourian's advice was the result of miscommunications or misunderstandings with opposing counsel. *See Bueno*, 822 F.2d at 421; *Gross*, 700 F.2d at 122. Nor was this an instance where there is any evidence the attorneys had a justifiable misunderstanding of any legal requirements; the out-of-state, but U.S. based, attorneys should have known of their abilities to advise their client on Delaware law. *See Feliciano*, 691 F.2d at 657–58. More importantly, I am unconvinced that Mikhail got any relevant legal advice, other than the November 7th advice that the courtesy copy of the complaint did not constitute service, during the time period when he could have timely responded to the Complaint or even have moved to vacate the default. To the contrary, this is a case in which there was plenty of time for Mikhail to seek legal advice, find a lawyer competent to advise on Delaware law, and respond in some form to this suit. *See Wells*, 728 F.2d at 214.

Mikhail's failure to take any action cannot be attributed to bad legal advice. The lack of action was his choice; while the conduct does not appear egregious, it was reckless and constitutes culpable conduct. The culpable conduct factor weighs against granting his motion.

## D. Alternative Sanctions

Prior to upholding a default judgment, the Third Circuit has instructed "the trial judge to determine whether any sanction short of a default judgment would be ineffective." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1182 (3d Cir. 1984). The fourth factor requires me to determine "whether compliance with reasonable conditions such as posting security and payment of costs and reasonable counsel fees would constitute sufficient sanctions." *Farnese*, 687 F.2d at 766. To give

11

me a basis to consider this factor (since it had not been addressed in the briefing), I requested that the parties submit letters detailing the possibility of alternative sanctions. (D.I. 36).

Plaintiff argues that no sanctions are appropriate because the longer Plaintiff is delayed in obtaining an enforceable judgment, the greater the chance that Defendants will be insolvent. (D.I. 37 at 1–2). Alternatively, Plaintiff proposes that Defendants may be required to post bond in the amount of the final judgment. (*Id.* at 5–6). Contrary to Defendants' arguments, the Third Circuit has approved of the use of bonds as an alternative sanction. *See Farnese*, 687 F.2d at 766; *Wokan v. Alladin Int'l, Inc.*, 485 F.2d 1232, 1234 (3d Cir. 1973); *see also DirecTV, LLC v. Alvarez*, 2017 WL 4284526, at *4 (D.N.J. Sept. 27, 2017). Posting security in the amount of the final judgment would preclude any harm resulting from changes to Mikhail's financial situation. However, I am not convinced that there has been any change in Defendants' current assets and ability to pay since Plaintiff obtained the default. Further, the bond amount cannot put the Plaintiff in a better position than before the default. *Wokan*, 485 F.2d at 1234–35. As there is evidence that Defendants do not have the money to pay the full judgment, requiring bond in the full amount would likely either preclude Defendants from moving forward with the litigation or would place Plaintiff in a better position that he currently is in. Thus, I do not think a bond is appropriate.

In addition to the bond requirement, Plaintiff argues that Defendants should be required to cover the costs associated with enforcing the judgment litigating the motion to vacate. (D.I. 37 at 4).[8] Defendants raise two objections. (D.I. 42 at 7–8).

---

[8] Plaintiff argues that Defendants should be required to pay:
> (i) $14,795.16 in fees and expenses incurred obtaining the default and default judgment, (ii) $121,681.91 in fees and expenses incurred in assisting with judgment enforcement and opposing the Motion, (iii) $36,127.65 incurred in prosecuting the fraudulent transfer lawsuit and other enforcement proceedings in Tennessee, and (iv) $9,000 for other judgment-enforcement expenses Mr. Willis incurred.

(D.I. 37 at 4).

First, Defendants argue that Plaintiff has not submitted particular types of evidence to prove that he actually paid the amount he has stated in his letter.[9] (*Id.* at 7–8). I do not think Plaintiff is required to submit proof of payment in the form that Defendants request; Willis has submitted affidavits from his three attorneys detailing the costs expended on the current motion and enforcing the judgment. (*See* D.I. 38; D.I. 39; D.I. 40).

Second, Defendants argue that the costs "should be limited to expenses directly caused by the default and expressly within the categories identified in the Court's Order." (D.I. 42 at 8). As such, Defendants argue, "Fees incurred opposing the Motion, pursuing enforcement in other jurisdictions, retaining investigators, or continuing aggressive collection activity after Defendants placed Plaintiff on notice that vacatur would be sought should not be shifted as a condition of vacatur." (*Id.*). I do not think that Plaintiff is limited to requesting costs that I specifically requested information on in my Order. (*See* D.I. 36). Nevertheless, I agree with Defendants' point. Plaintiff chose not to agree to the vacating of the default, and indeed Plaintiff knew on January 22, 2026, soon after obtaining the default, that Defendants would seek such relief. I believe a reasonable sanction is $15,000, which approximates what Plaintiff spent on obtaining the default. (D.I. 37 at 4; D.I. 38 at 1; D.I. 39 at 1). Plaintiff's aggressive efforts to enforce the judgment while there was a question as to whether it would stand was Plaintiff's choice, and I do not think Mikhail should be sanctioned for those expenses.

---

[9] Defendants specifically identify "billing records, receipts, proof of payment, proof of amounts presently owed, or any basis to determine whether the requested amounts reflect hourly fees, contingent-fee exposure, deferred fees, discounted fees, lodestar-style figures, estimates, or strategic enforcement expenses" as the records they believe are necessary. (D.I. 42 at 7–8).

The fourth factor favors vacatur as an alternative sanctions can be used to reimburse Plaintiff for the expenses that Plaintiff incurred in obtaining a default judgment when it was Defendants' culpable conduct that necessitated Plaintiff's expenses.

### E.  Balance of the Factors

As to Lazarus, the factors strongly disfavor vacating the default judgment.  Although the first factor favors vacatur because of the lack of prejudice to Plaintiff, Lazarus has not presented a meritorious defense, and the evidence indicates that Lazarus is culpable for its default. There is no reason that the default should be vacated for a party that has not presented a meritorious defense and has not attempted to explain why it defaulted.

As to Mikhail, the first factor favors vacatur due to the lack of prejudice to Plaintiff.  The second factor slightly favors vacatur because, despite presenting limited evidence or argument in support, Mikhail has shown at least one meritorious defense.  However, the third factor slightly weighs against Mikhail because the evidence shows he is culpable for the default entered against him.  The fourth factor favors vacatur as it allows for Mikhail to be sanctioned for his role in the default while avoiding the disproportionate sanction of default.  The Third Circuit has noted that "as a general matter this court does not favor defaults and that in a close case doubts should be resolved in favor of setting aside the default and reaching a decision on the merits." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir. 1983).  This case is the type of "close case" in which alternative sanctions are appropriate to address the Defendant's role in the default but to allow for the case to move forward on the merits.

For the reasons stated above, the motion to vacate default judgment is granted as to Mikhail and denied as to Lazarus.

14

Defendant Sarkis Mikhail is ORDERED to pay $15,000 to Plaintiff within ten days.  The parties are directed to advise the Court when the payment has been made.  At that time, the Court will enter an order vacating the default and the default judgment.

IT IS SO ORDERED.

Entered this 27th day of July, 2026

_____
United States District Judge

15